[Cite as *In re Henderson*, 2012-Ohio-4848.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

IN RE: CAROLYN E. HENDERSON

CAROLYN E. HENDERSON

       Applicant

Case No. V2011-60930

Commissioners:
E. Joel Wesp, Presiding
Susan G. Sheridan
Necol Russell-Washington

ORDER OF A THREE-COMMISSIONER PANEL

{¶1} On July 18, 2011, applicant, Carolyn Henderson, filed a compensation application as the result of an incident which occurred on July 15, 2009. On August 16, 2011, the Attorney General issued a finding of fact and decision denying the applicant's claim because she did not qualify as a victim of criminally injurious conduct pursuant to R.C. 2743.51(C)(1). On September 16, 2011, the applicant filed a request for reconsideration. On November 14, 2011, the Attorney General rendered a Final Decision finding no reason to modify the initial decision.

{¶2} On December 16, 2011, the applicant filed a notice of appeal from the November 14, 2011 Final Decision of the Attorney General. Hence, this claim was heard before this panel of commissioners on March 8, 2012 at 9:55 A.M.

{¶3} The applicant, Carolyn Henderson and her counsel, Byron Potts, appeared at the hearing, while Assistant Attorneys General Gwynn Kinsel and Melissa Montgomery represented the state of Ohio.

{¶4} The only issue on appeal is whether the applicant qualifies as a victim of criminally injurious conduct. After brief opening statements, the applicant, Carolyn Henderson took the witness stand. The applicant stated on July 15, 2009, she was shopping at

Kroger at approximately 12:30 A.M., while checking out at the U-Scan a Kroger employee approached her and began knocking her groceries on the floor. As she attempted to finish her grocery checkout, the employee again began to interfere in a disruptive manner. The applicant stated she asked the employee for assistance but he became agitated, and started throwing boxes at her. A beam separated her from the employee and when the boxes hit the beam small metal clippings and dust were propelled into her eyes. Mrs. Henderson testified that she experienced fear and apprehension at the time of the incident. She stated she believed another employee reported the incident to Kroger management.

{¶5} At that point she left the store and went to the emergency room. She recalled a doctor numbed and rinsed her eyes and directed her to contact the police. The applicant was shown Applicant's Exhibit 1, a call report from the Mansfield Police Department dated July 15, 2009. She identified the report and stated the call was made to police as the result of the assault which occurred at Kroger.

{¶6} The applicant was then presented with Applicant's Exhibit 2, an adult triage report. The applicant read the report concerning the incident at Kroger and that she had dust in her eyes. Finally, the applicant was shown Applicant's Exhibit 3, a letter from Juan Penhos, M.D., dated July 27, 2009. The letter outlined the incident at Kroger and stated that as a result of this incident she got dust in her eyes.

{¶7} Upon cross-examination, the applicant stated that another store employee witnessed the incident. The applicant conceded she did not speak to the store manager or file an incident report with Kroger, nor did she make any follow up visits.

{¶8} The Attorney General introduced State's Exhibit A, a Mansfield Hospital Emergency Department Report. The Attorney General directed the applicant to read the section of the report entitled "History of Present Illness." The applicant read the following:

>           a.           "Patient was at the grocery store when one of the clerks apparently moved a bunch of boxes and the dust from the boxes went into her eyes.

None of the boxes struck her. Patient stated she got some dust in her eyes, which caused some irritation and she presented here for evaluation."

{¶9} The applicant revealed that the doctor found material in her eyes when he put her under a machine. He informed her, her eyes would need to be numbed so he could rinse them. The Attorney General then directed the applicant to read the last sentence of the section entitled "Physical Examination." Applicant read, "There is no foreign material seen."

{¶10} The Attorney General directed the applicant's attention to Applicant's Exhibit 1. The applicant read the following: "Wanted to speak with an officer reference dirt in her eyes. The applicant stated an officer appeared at the hospital and she informed the officer what had happened at Kroger, but it did not appear to her that the officer ever memorialized her comments."

{¶11} On redirect examination, the applicant stated she had the impression that Kroger was aware of the incident by the actions of the other employees. Furthermore, the applicant was never advised that she should file an incident report.

{¶12} The applicant's attention was directed to State's Exhibit A. The applicant does not know who typed this document nor was she allowed to review this document at the time it was prepared. She reiterated that material was in her eyes which had to be rinsed out.

{¶13} Finally, the applicant stated, based on the Attorney General's inquiry, that to the best of her knowledge no one had been criminally charged as the result of this incident.

{¶14} Upon questioning by the panel of commissioners the applicant clarified the conduct of the Kroger employee at the time of the incident. She related that her first encounter with the employee was when he spun the carousel upon which her groceries were resting, flinging them onto the floor. The applicant asserted her request for assistance seemed to trigger his agitated behavior. At that point he went over to the

cash register and began opening and closing drawers in a disturbing manner. She then discussed how she exited the store and the frightening nature of the experience.

{¶15} The applicant acknowledged that after this encounter she went to the emergency room to receive treatment for her eyes. The applicant described her medical treatment since the events of July 15, 2009. Whereupon, the applicant's testimony was concluded.

{¶16} In closing, the Attorney General argued that the uncorroborated statements of the applicant are insufficient to prove she was a victim of criminally injurious conduct. In the case at bar there is no corroborating evidence, no incident report from Kroger, and no police report. Accordingly, the Attorney General's Final Decision should be affirmed.

{¶17} The applicant averred that the burden of proving criminally injurious conduct had been met. The conduct was corroborated by the evidence submitted at the hearing. Accordingly, the applicant's prays that the Attorney General's Final Decision is reversed.

{¶18} R.C. 2743.51(C)(1) in pertinent part states:

a. "(C) 'Criminally injurious conduct' means one of the following:

b. "(1) For the purposes of any person described in division (A)(1) of this section, any conduct that occurs or is attempted in this state; poses a substantial threat of personal injury or death..."

{¶19} The applicant must prove criminally injurious conduct by a preponderance of the evidence. *In re Rios*, 8 Ohio Misc. 2d 4, 455 N.E. 2d 1374 (Ct. of Cl. 1983).

{¶20} Black's Law Dictionary Eighth Edition (1999) defines *prima facie* as "the establishment of a legally required rebuttable presumption...enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor."

{¶21} Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence

which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶22} Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶23} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass*, 10 Ohio St. 2d 230, 227 N.E. 2d 212 (1967), paragraph one of the syllabus. The court is free to believe or disbelieve, all or any part of each witness's testimony. *State v. Antill*, 176 Ohio St. 61, 197 N.E. 2d 548 (1964).

{¶24} "[T]he uncorroborated statement of the applicant does not constitute sufficient proof, by a preponderance of the evidence, to establish the criminally injurious conduct occurred." *In re Warren*, V2008-30014tc (9-5-08) at 3 citing *In re Minadeo*, V79-3435jud (10-31-80).

{¶25} Upon review of the case file and with full and careful consideration given to the testimony and arguments presented at the hearing, we find the applicant has met her burden of proof that she was a victim of criminally injurious conduct. We believe the applicant has made a *prima facie* case based upon the credible testimony of the applicant, the contemporaneous statements of the applicant elicited in the adult triage report, and Doctor Penhos' letter. Accordingly, the burden of proof shifted to the Attorney General to rebut the presumption created by the applicant. The Attorney General failed to do so. Applicant's evidence was admitted without objection, the evidence's veracity was not questioned and no contra witnesses were presented. Accordingly, based on the Attorney General's failure to rebut the presumption we find that the applicant qualifies as a victim of criminally injurious conduct and the Attorney General's Final Decision is reversed.

{¶26} IT IS THEREFORE ORDERED THAT

**{¶27}** Applicant's Exhibits 1, 2, and 3 are admitted into evidence;

**{¶28}** State's Exhibit A is admitted into evidence;

**{¶29}** The November 14, 2011 decision of the Attorney General is REVERSED and judgment is rendered in favor of the applicant;

**{¶30}** This claim is remanded to the Attorney General for calculation of economic loss and decision;

**{¶31}** This order is entered without prejudice to the applicant's right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

**{¶32}** Costs are assumed by the court of claims victims of crime fund.

_____
E. JOEL WESP
Presiding Commissioner


_____
SUSAN G. SHERIDAN
Commissioner


_____
NECOL RUSSELL-WASHINGTON
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2012\June - Sept 2012\V2011-60930 Henderson.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Richland County Prosecuting Attorney and to: